GERTRUDE H. SWEET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9240.    Promulgated September 29, 1927.

> Petitioner entered into a contract of sale of land in 1920 under which the vendee paid 25 per cent of the purchase price and during 1920 made additional payments on the purchase price as required by the contract. *Held*, the petitioner is not entitled to report income from the transaction on an installment basis.

*J. Porter Russell, Esq.*, for the petitioner.
*J. W. Fisher, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiency in income tax for the year 1920 in the amount of $6,697.91. The only allegation of error is that the Commissioner erroneously computed the net income for 1920 in requiring the petitioner to account for the entire profit upon a sale of real estate in 1920 instead of accounting for a proportionate part of the profit, the claim being made that the profit should be spread over the years during which payments were received from the vendee.

### FINDINGS OF FACT.

The petitioner is the daughter of Albert K. Hunton, of Detroit, Mich., deceased since 1914. At the time of his death he was the owner of a parcel of real estate on Franklin Street, in Detroit, adjoining the Grand Trunk Railroad property, which many years before he had used as a lumber yard but which for many years had been used by a junk dealer. It was in a part of the city where there was a large amount of very poor real estate and for many years the income therefrom had only been sufficient to pay taxes. Upon Hunton's death in 1914 his appraisers, who were two bankers and business men of Detroit, of several years experience, appraised the property at $25,000.

From 1914 until 1920 the petitioner's husband, who was also the executor of Hunton's estate, endeavored to dispose of the property. He listed it with a prominent firm of real estate brokers in Detroit, but was unable to obtain any offer for the property.

In September or October, 1920, and after the property had been in the hands of the brokers during the entire period from 1914 to 1920, a firm by the name of Kimball-Eisenberg offered to purchase the property without the intervention of any brokers. They offered $60,000 for the property and agreed to pay $15,000 down and $1,000 per month for 45 months, with interest on deferred payments at the rate of 6½ per centum per annum. Accordingly, a contract was entered into on October 4, 1920, by which the petitioner sold to Kimball-Eisenberg the property above referred to upon the terms stipulated. A warranty deed was to be given to the property by the grantor upon the completion of the payments. The vendee was entitled to immediate possession and was required to pay all taxes on the property. The contract provided in part:

It is Further Agreed, by the parties hereto, that time shall be of the essence of this contract and that if the said party of the second part shall fail to make any of the payments or perform any of the conditions above set forth, in the manner and at the time above limited therefor, the party of the first part shall, immediately after such failure, have the right to declare this contract void, and to retain whatever may have been paid hereon, and the premises, together with the buildings and improvements thereon as stipulated damages, and may consider and treat the party of the second part as her tenant holding over without permission, and may without notice, written or otherwise, take immediate possession of the premises and remove the party of the second part therefrom.

The fair market value of the property in 1920 was between $35,000 and $40,000. The vendee made two payments of $1,000 each in 1920. It failed to meet all of its payments during the years 1921, 1922, and 1923. It made nine payments of $1,000 each in 1921, eight payments of $1,000 each in 1922, seven payments of $1,000 each in 1923, and paid the balance of $19,000 due, together with accumulated interest, in 1924, whereupon warranty deed was given to the vendee for the property.

The petitioner desired to dispose of her land contract soon after it was acquired, but was advised by leading bankers and business men of Detroit that the contract could not be negotiated at anywhere near its face value. Land contracts similar to that held by the petitioner could not be disposed of in 1920 and 1921 in Detroit except at a discount of from 10 to 30 per cent. The fair market value of the land contract held by the petitioner could not have been sold except at a discount of 25 per cent of the aggregate face value of the payments to be made thereon.

SMITH : There is no contention in this proceeding as to the amount of profit realized by the petitioner upon the sale of the land in Detroit. The only question is the amount of profit which she is liable to income tax upon in the year 1920. The respondent claims that the amount of profit realized in 1920 is the difference between the value of the land at the time acquired by the petitioner and the selling price, or $60,000. Petitioner's original contention is that the transaction was a deferred-payment contract and if not allowed as a deferred-payment contract it was an installment contract within the meaning of the Commissioner's regulations. At the hearing the petitioner amended her petition to claim that the transaction was a deferred-payment contract under the provisions of the Revenue Act of 1926.

The evidence of record indicates that the cash value of the land contract received by the petitioner in 1920 was not equal to its face value. Richard G. Lambrecht, a deponent on behalf of the petitioner, deposed that in his opinion the contract could not have been sold except at a discount of from 25 to 30 per cent. Upon the basis of his testimony, we have reached the conclusion that the fair market value of the contract at the date of receipt was 75 per cent of its face value, that is, the face of the deferred payments.

Section 212(d) of the Revenue Act of 1926 provides:

* * * In the case * * * of a sale or other disposition of real property, if * * * the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

Section 1208 of the same Act provides that subdivision (d) of section 212 shall be retroactively applied in computing income under the provisions of prior Revenue Acts beginning with the Revenue Act of 1916.

By virtue of the provisions of the Revenue Act of 1926 the petitioner claims the right to have her income from the sale of the property in question computed on the installment basis. It is clear from the facts, however, that she is not entitled to any benefits under the Revenue Act of 1926, since the initial payments, as defined in section 212(d) of that Act, were more than 25 per cent of the selling price. The selling price was $60,000 and the cash received during 1920 was $17,000.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LITTLETON and LOVE.